IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | |
|---|---|
| **NETVET GROUP,** § | |
| § | |
| **Plaintiff,** § | |
| § | |
| v. § | Civil Action No. 3:10-CV-1934-BH |
| § | |
| **SCOTT FAGIN, et al.,** § | |
| § | |
| **Defendants.** § | |

## MEMORANDUM OPINION AND ORDER

Pursuant to the District Court's *Order*, filed November 4, 2010, this matter has been transferred for the conduct of all further proceedings and the entry of judgment. Before the Court are *David Twiss' Motion to Dismiss for Failure to State a Claim Upon Which Relief Can be Granted* (doc. 40), filed March 24, 2011; *Defendant FDIC, as Receiver for Colonial Bank's Motion to Dismiss for Failure to State a Claim or, Alternatively, Motion for More Definite Statement, and Brief in Support* (doc. 44), filed March 30, 2011; *Defendant C. Malcolm Holland's Motion to Dimiss for Failure to State a Claim Upon Which Relief Can be Granted and Brief in Support* (doc. 48), filed April 8, 2011; and *Defendant Scott Fagin's Motion to Dismiss for Failure to State a Claim or Alternatively, Motion for More Definite Statement, and Brief in Support* (doc. 53), filed April 15, 2011. Based on the relevant filings and applicable law, the motions to dismiss are **GRANTED**, and the alternative motions for a more definite statement are **DENIED** as moot.

### I. BACKGROUND

Plaintiff NetVet, Inc. ("Plaintiff") has filed this action against Scott Fagin, David Twiss, Malcolm Holland, and the Federal Deposit Insurance Corporation ("FDIC") as receiver for Colonial Bank ("Colonial") (collectively "Defendants"), claiming fraud, breach of fiduciary duty, negligence,

negligent misrepresentation, theft, conversion, and gross negligence.

Plaintiff alleges that it obtained a $3,000,000.00 construction loan from Colonial in 2007 to build a veterinary hospital and hired Integrated Builder's, Inc. ("IBI") as its general contractor on the construction project. Like Plaintiff, IBI also had a promissory note and accounts with Colonial. Plaintiff claims that Colonials' intimate knowledge of their accounts and financial position proved beneficial at the outset because it allowed for the expedited transfer of funds from the construction loan to IBI for the project. By February 2008, the construction project had allegedly progressed and several draws had been made against the loan.

Around the same time, however, Plaintiff allegedly became concerned about IBI's ability to complete the project after hearing that it had encountered financial difficulties. Based on these concerns, Bruce Nixon (its executive director) allegedly approached Fagin (a banker at Colonial), to inquire about IBI's financial condition. Fagin allegedly told Nixon that "despite a perfect storm of events having transpired, IBI was doing well financially, that based on his intimate knowledge of IBI's banking situation, Defendants had no concerns about IBI and were fully confident in IBI's ability to complete [Plaintiff's] project, and that Nixon should not be concerned with IBI's long-term financial position." Plaintiff claims that given Fagin's assurances as a senior officer with Colonial, it allowed the project to continue and draws to be made as they had been in the past.

Plaintiff claims that in May 2008, it requested another draw against the construction loan for approximately $271,000.00 so that IBI could pay its subcontractors. It alleges that Defendants approved the request and transferred the funds to IBI's account, but refused to release them when IBI cut checks to the subcontractors. They allegedly called a meeting with IBI instead, concluded that IBI had defaulted on the promissory note, and swept all of its accounts, including the one funded

with the $271,000.00 from the construction loan. Plaintiff claims that Defendants transferred the funds from its construction loan to IBI's accounts knowing that they were about to freeze those accounts, pressured Plaintiff to execute an agreement to increase the construction loan by another $271,000.00, and inserted a release into the agreement to absolve themselves of any wrongdoing. Plaintiff states that it refused to execute the agreement, borrowed funds from other more reputable sources, and proceeded to hire another contractor to complete the construction project at a cost of approximately $180,000.00.

Defendants now move to dismiss all of Plaintiff's claims against them under Fed. R. Civ. P. 12(b)(6) for failure to state a claim upon which relief can be granted. Fagin and FDIC also move in the alternative for a more definite statement under Fed. R. Civ. P. 12(e).

## II. LEGAL STANDARD

Motions to dismiss under Rule 12(b)(6) are disfavored and rarely granted. *Sosa v. Coleman*, 646 F.2d 991, 993 (5th Cir. 1981). Under the 12(b)(6) standard, a court cannot look beyond the pleadings. *Spivey v. Robertson*, 197 F.3d 772, 774 (5th Cir. 1999); *Baker v. Putnal*, 75 F.3d 190, 196 (5th Cir. 1996). Pleadings must show specific, well-pleaded facts, not mere conclusory allegations to avoid dismissal. *Guidry v. Bank of LaPlace*, 954 F.2d 278, 281 (5th Cir. 1992). The court must accept those well-pleaded facts as true and view them in the light most favorable to the plaintiff. *Baker*, 75 F.3d at 196. "[A] well-pleaded complaint may proceed even if it strikes a savvy judge that actual proof of [the alleged] facts is improbable, and 'that a recovery is very remote and unlikely.'" *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 556 (2007) (citation omitted). Although "detailed factual allegations" are not necessary, a plaintiff must provide "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Id.* at 555; *accord*

3

*Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009) (emphasizing that "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions"). The alleged facts must "raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555. In short, a complaint fails to state a claim upon which relief may be granted when it fails to plead "enough facts to state a claim to relief that is plausible on its face." *Id.* at 570.

> A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. The plausibility standard is not akin to a "probability requirement," but it asks for more than a sheer possibility that a defendant has acted unlawfully. Where a complaint pleads facts that are "merely consistent with" a defendant's liability, it "stops short of the line between possibility and plausibility of 'entitlement to relief.'"

*Iqbal*, 129 S. Ct. at 1949 (citations omitted). When plaintiffs "have not nudged their claims across the line from conceivable to plausible, their complaint must be dismissed." *Twombly*, 550 U.S. at 570; *accord Iqbal*, 129 S. Ct. at 1950-51.

### III. BREACH OF FIDUCIARY DUTY

Defendants move to dismiss Plaintiff's claim for breach of fiduciary duty on grounds that the alleged facts are not sufficient to suggest the existence of a fiduciary relationship between Plaintiff and the Defendants.

To state a claim for breach of fiduciary duty in Texas, a plaintiff must allege, among other things, that a fiduciary relationship existed between the plaintiff and the defendant. *Navigant Consulting, Inc. v. Wilkinson*, 508 F.3d 277, 283 (5th Cir. 2007) (citing *Jones v. Blume*, 196 S.W.3d 440, 447 (Tex. App.—Dallas 2006, pet. denied)).[1] Texas law recognizes two types of fiduciary relationships. The first is a formal fiduciary relationship, such as between attorney and client,

---

[1] The parties agree that Texas law applies in this diversity case.

principal and agent, partners, and joint venturers. *Ins. Co. of N. Am. v. Morris*, 981 S.W.2d 667, 674 (Tex. 1998). The second is an informal or confidential relationship that "may arise from a moral, social, domestic, or purely personal relationship of trust and confidence." *Associated Indem. Corp. v. CAT Contracting Co.*, 964 S.W.2d 276, 287–88 (Tex. 1998). Such an informal or confidential relationship "may arise when the parties have dealt with each other in such a manner for a long period of time that one party is justified in expecting the other to act in its best interest." *Morris*, 981 S.W.2d at 674. It may also arise in cases in which "influence has been acquired and abused, in which confidence has been reposed and betrayed." *Associated Indem. Corp.*, 964 S.W.2d at 287. Texas courts do not recognize or create such an informal or confidential fiduciary relationship lightly. *K3C Inc. v. Bank of Am., N.A.*, 204 F. App'x 455, 461 (5th Cir. 2006); *Schlumberger Tech. Corp. v. Swanson*, 959 S.W.2d 171, 177 (Tex. 1997).

As a general rule, the relationship between a lender and a borrower does not involve a special or confidential relationship. *Mfrs. Hanover Trust Co. v. Kingston Inv. Corp.*, 819 S.W.2d 607, 610 (Tex. App.—Houston [1st Dist.] 1991, no writ). "In order to prove that a fiduciary relationship does exist in such a context, the plaintiff must show extraordinary circumstances such as excessive control and influence by the lender on the borrower's business activities." *Hopkins v. Wells Fargo Bank, N.A.*, 2011 WL 611664, at *2 (N.D. Tex. 2011) (quoting *In re Absolute Res. Corp.*, 76 F. Supp. 2d 723, 734 (N.D. Tex. 1999)). "Mere subjective trust by the borrower or evidence of prior dealings is not sufficient." *In re Absolute Res. Corp.*, 76 F. Supp. 2d at 734 (citing *Greater Sw. Office Park, Ltd. v. Tex. Commerce Bank Nat'l Ass'n*, 786 S.W.2d 386, 391 (Tex. App.—Houston [1st Dist.] 1990, writ denied)).

Here, Plaintiff does not make any allegations suggesting that it had a long-standing

relationship of trust and confidence with Defendants, that Defendants have dealt with it in such a manner for a long period of time that it is justified in expecting them to act in its best interest, or that Defendants betrayed its confidence or exercised excessive control or influence over its business activities. It merely alleges that Fagin's voluntary disclosure of IBI's financial condition and ratification of Fagin's action by Twiss, Holland, and Colonial created a fiduciary relationship. Texas law "rejects the position that lenders become fiduciaries by exchanging business information or 'advice' with their borrowers", however. *Williams v. Countrywide Home Loans, Inc.*, 504 F. Supp. 2d 176, 193 (S.D. Tex. 2007) (citations omitted). Plaintiff does not provide any legal authority for its proposition that a lender's one-time disclosure of a client's financial condition, prompted by the borrower, converts the lender into the borrower's fiduciary. Since Plaintiff has not alleged facts giving rise to a reasonable inference that it had a fiduciary relationship with Defendants, it has failed to state a claim for breach of fiduciary duty against them.

## IV. NEGLIGENCE & GROSS NEGLIGENCE

Defendants next move to dismiss Plaintiff's negligence causes of action on grounds that there are no allegations suggesting a duty to disclose information related to IBI's financial condition and that the economic loss doctrine bars a negligence claim. Fagin, FDIC and Twiss additionally argue that Plaintiff has not made any allegations of breach and causation.

The elements of a negligence cause of action under Texas law are: (1) the existence of a legal duty; (2) a breach of that duty; and (3) damages proximately caused by that breach. *Boudreaux v. Swift Transp. Co., Inc.*, 402 F.3d 536, 540–41 (5th Cir. 2005) (citing *IHS Cedars Treatment Ctr. of Desoto, Tex., Inc. v. Mason*, 143 S.W.3d 794, 798 (Tex. 2004)). Gross negligence has two additional requirements: "(1) viewed objectively from the standpoint of the actor, the act or omission

6

must involve an extreme degree of risk, considering the probability and magnitude of the potential harm to others, and (2) the actor must have actual, subjective awareness of the risk involved, but nevertheless proceed with conscious indifference to the rights, safety, or welfare of others." *Great Plains Trust Co. v. Morgan Stanley Dean Witter & Co.*, 313 F.3d 305, 314 (5th Cir. 2002) (citations omitted); *see also In re Thrash*, 433 B.R. 585, 600 (N.D. Tex. 2010). The threshold inquiry in any negligence case is duty. *Great Plains Trust Co.*, 313 F.3d at 314 (citing *Greater Houston Transp. Co. v. Phillips*, 801 S.W.2d 523, 525 (Tex. 1990)). "Whether a legal duty exists is a threshold question of law for the court to decide from the facts surrounding the occurrence in question." *Thapar v. Zezulka*, 994 S.W.2d 635, 637 (Tex. 1999). In deciding whether to impose a duty, the court must balance "the risk, foreseeability, and likelihood of injury against the social utility of the actor's conduct, the magnitude of the burden of guarding against the injury, and the consequences of placing the burden on the defendant." *Golden Spread Council, Inc. No. 562 of Boy Scouts of Am. v. Akins*, 926 S.W.2d 287, 289 (Tex. 1996).

Here, Plaintiff's allegation that Defendants had a duty to accurately represent IBI's financial condition because of Fagin's voluntary disclosure of IBI's financial condition is not sufficient to impose a duty to disclose on Defendants. Even if the risk of injury to Plaintiff was reasonably foreseeable to Defendants because of their knowledge of Plaintiff's and IBI's accounts, imposing a duty on the bank or its employees to disclose one customer's information to another customer based on a similar one-time disclosure would be immensely burdensome to Defendants and would not be advisable as a matter of public policy. As one court put it, imposing such a duty would create a "Hobson's choice" for the banks, because disclosure of one customer's private banking information to another would, in many cases, violate state and federal law, or expose them to claims

for tortious interference with contract. *See Fleming v. Tex. Coastal Bank of Pasadena*, 67 S.W.3d 459, 462 (Tex. App.—Houston [14th Dist.] 2002, pet. denied). Given no duty on the part of Defendants to disclose IBI's financial information, Plaintiff has failed to state a negligence claim against them. Since resolution of the duty issue is dispositive of the negligence claims, it is unnecessary to address the remaining issues regarding the negligence causes of action.

## V. NEGLIGENT MISREPRESENTATION

Defendants also move to dimiss Plaintiff's negligent representation claim on grounds that the allegations supporting the claim are conclusory and unsupported by facts.

A claim for negligent representation under Texas law consists of four elements: (1) the defendant made a representation in the course of his business, or in a transaction in which he has a pecuniary interest; (2) the defendant supplied false information for the guidance of others in their business; (3) the defendant did not exercise reasonable care or competence in obtaining or communicating the information; and (4) the plaintiff suffered pecuniary loss by justifiably relying on the representation. *General Elec. Capital Corp. v. Posey*, 415 F.3d 391 (5th Cir. 2005); *see also Nazareth Int'l. Inc. v. J.C. Penney Co.*, 287 S.W.3d 452, 460 (Tex. App.—Dallas 2009, pet. denied).

With respect to its negligent misrepresentation claim, Plaintiff alleges that Fagin made false representations regarding the financial stability of IBI and its ability to complete the project, that Fagin and Colonial did not exercise reasonable care in obtaining or communicating the information to Plaintiff despite the fact that Defendants had intimate knowledge of both Plaintiff's and IBI's financial position and the transaction between them, and despite the fact that Defendants had an interest in the transaction. The critical ingredient missing from these allegations is an explanation of how Fagin's representation was false at the time it was made. Additionally, there are no factual

8

allegations to support Plaintiff's conclusory assertion that Fagin did not exercise reasonable care in obtaining or communicating the information to it, or to show that Twiss and Holland made any representation, false or otherwise, or were involved with the alleged misrepresentation by Fagin. In short, the complaint fails to state a negligent misrepresentation claim against Defendants.

## VI. THEFT

Defendants move to dismiss Plaintiff's theft claim on grounds that they are supported by nothing more than conclusory assertions and threadbare recitals of the elements of the theft cause of action.

Plaintiff has asserted its theft claim under the Texas Theft Liability Act, which defines theft "as unlawfully appropriating property or unlawfully obtaining services" as described by various sections of the Texas Penal Code. *See* Tex. Civ. Prac. & Rem. Code § 134.002(2). Under § 31.03 of the Texas Penal Code, "a person commits theft if he unlawfully appropriates property with the intent to deprive the owner of the property." Tex. Penal Code § 31.03(a). Section 31.01(5)(C) of the Texas Penal Code defines property to include money or a document that represents anything of value. *See id.* § 31.01(5)(C). Appropriation of property is unlawful if it is without the owner's effective consent. *Id.* § 31.03(b).

Regarding its theft claim, Plaintiff alleges that Defendants neither had a right to possess the funds intended for its subcontractors, nor had its effective consent because any consent they obtained for the draw was induced by deception. It claims that Defendants knew they would be taking the funds by refusing to release them to the subcontractors and subsequently declaring IBI in default so they could sweep the account containing those funds. It further states that Defendants' "intent was to deprive Plaintiff of its property "by deceiving it into an account that Defendants intended to

9

sweep as they created the appearance of a justification." These allegations amount to nothing more than mere speculation or a sheer possibility that Defendants engaged in wrongdoing. As discussed, the factual allegations are not sufficient to give rise to a reasonable inference that the representation was false or was made with the intent to deceive or induce Plaintiff into making the payment to IBI before freezing IBI's accounts. Additionally, there are no factual allegations showing that Twiss and Holland were involved in the alleged representation, or that Colonial was not entitled to take the actions it did to foreclose on IBI's accounts. Because Plaintiff has not nudged its theft claim across the line from conceivable to plausible, the claim is subject to dismissal under Rule 12(b)(6).

## VII. CONVERSION

Defendants likewise move to dismiss Plaintiff's conversion claim on grounds that it has not alleged any facts to support it.

To establish a claim for conversion under Texas law, a plaintiff must show that the defendant wrongfully exercised dominion or control over the property of the plaintiff to the exclusion of, or inconsistent with the plaintiff's right of possession. *50-Off Stores, Inc. v. Banques Paribas (Suisse)*, 180 F.3d 247, 253 (5th Cir. 1999); *see also Robinson v. Nat'l Autotech, Inc.*, 117 S.W.3d 37, 39 (Tex. App.—Dallas 2003, pet. denied). The claim has three elements: "(1) the plaintiff owned, had legal possession of, or was entitled to possession of the property; (2) the defendant assumed and exercised dominion and control over the property in an unlawful and unauthorized manner, to the exclusion of and inconsistent with the plaintiff's rights; and (3) the defendant refused the plaintiff's demand for the return of the property." *City Bank v. Compass Bank*, 717 F. Supp. 2d 599, 2010 WL 1959808, at *10 (W.D. Tex. 2010) (quoting *Huffmeyer v. Mann*, 49 S.W.3d 554, 558 (Tex. App.—Corpus Christi 2001, no pet.)).

Plaintiff makes conclusory allegations that Defendants "wrongfully exercised dominion and control over" the funds they transferred into IBI's account, that the funds belonged to Plaintiff, and that they were specifically intended to pay the subcontractors. Plaintiff does not explain how the individual defendants exercised personal dominion or control over the funds, or how any exercise was wrongful or illegal after Plaintiff expressly requested the funds transferred into IBI's account. The subsequent freezing of IBI's account to foreclose on a security interest is not sufficient to give rise to a reasonable inference that the dominion or control on the account was wrongful. The fact that a bank official made a representation two months earlier regarding IBI's financial condition and ability to complete the project is also not sufficient to draw a reasonable inference that the exercise of dominion or control was wrongful or illegal or that Plaintiff owned, legally possessed, or was entitled to possession of the funds. Given these deficiencies, Plaintiff has failed to state a conversion claim against Defendants.

## VIII. FRAUD

Defendants move to dismiss Plaintiff's claim for fraud by affirmative representation and by failure to disclose on grounds that it fails to meet the heightened pleading standard of Federal Rule of Civil Procedure 9(b).

### A. Heightened Standard

A dismissal for failure to plead fraud with particularity pursuant to Rule 9(b) is treated the same as a Rule 12(b)(6) dismissal for failure to state a claim. *McCall v. Genentech, Inc.*, 2011 WL 2312280, at *3 (N.D. Tex. 2011) (citing *Lovelace v. Software Spectrum Inc.*, 78 F.3d 1015, 1017 (5th Cir. 1996)). Rule 9(b) contains a heightened pleading standard and requires a plaintiff to plead the circumstances constituting fraud with particularity. *See City of Clinton, Ark. v. Pilgrim's Pride*

*Corp.*, 632 F.3d 148, 153 (5th Cir. 2010). "[A]rticulating the elements of fraud with particularity requires a plaintiff to specify the statements contended to be fraudulent, identify the speaker, state when and where the statements were made, and explain why the statements were fraudulent." *Williams v. WMX Techs.*, 112 F.3d 175, 177 (5th Cir. 1997). "Put simply, Rule 9(b) requires 'the who, what, when, where, and how' to be laid out" with respect to a fraud claim. *Benchmark Electronics, Inc. v. J.M. Huber Corp.*, 343 F.3d 719, 724 (5th Cir. 2003).

## A. Misrepresentation

Plaintiff first alleges that Fagin committed fraud by making a material misrepresentation regarding IBI's financial stability and its ability to complete the project, and that Holland, Twiss, and Colonial, ratified Fagin's conduct. The elements of fraud by affirmative misrepresentation in Texas are: (1) the defendant made a representation to the plaintiff; (2) the representation was material; (3) the representation was false; (4) when the defendant made the representation, he knew it was false or made it recklessly and without knowledge of its truth; (5) the defendant made the representation with the intent that the plaintiff act on it; (6) the plaintiff relied on the representation; and (7) the representation caused injury to the plaintiff. *Shandong Yinguang Chem. Indus. Joint Stock Co. v. Potter*, 607 F.3d 1029, 1032–33 (5th Cir. 2010) (citing *Ernst & Young, L.L.P. v. Pacific Mut. Life Ins. Co.*, 51 S.W.3d 573, 577 (Tex. 2001)).

Plaintiff's allegations concerning its fraud by misrepresentation claim are conclusory, and are not supported by any facts giving rise to a reasonable inference that the alleged representation was false. The fact that IBI defaulted on a promissory note approximately two months after the alleged representation was made, without more, cannot not lead to a reasonable inference that the representation was false when it was made, or was made with knowledge of its falsity or in reckless

disregard of the truth. Plaintiff has failed to state a fraud by misrepresentation claim against Fagin, and given its conclusory assertions about ratification by the remaining defendants, has also failed to state such a claim against them.

## B. Non-Disclosure

Plaintiff also alleges that Defendants committed fraud by failing to disclose IBI's worsening situation and their scheme to freeze IBI's accounts. "As a general rule, a failure to disclose information does not constitute fraud unless there is a duty to disclose the information." *Bradford v. Vento*, 48 S.W.3d 749, 755 (Tex. 2001) (citing *Morris*, 981 S.W.2d at 674)). Silence may equate to fraud only "when the particular circumstances impose a duty on the party to speak and he deliberately remains silent." *See id.* (citing *SmithKline Beecham Corp. v. Doe*, 903 S.W.2d 347, 353 (Tex. 1995)). A duty to disclose arises by operation of law when: (1) there is a confidential or fiduciary relationship between the parties; (2) one party learns that his previous affirmative statement was false or misleading; (3) one party knows that the other party is relying on a concealed fact, provided that the concealing party also knows that the relying party is ignorant of the concealed fact and does not have an equal opportunity to discover the truth; or (4) one party makes a partial disclosure voluntarily and conveys a false impression. *Union Pac. Res. Group v. Rhone Poulenc, Inc.*, 247 F.3d 574, 586 (5th Cir. 2001) (citing *World Help v. Leisure Lifestyles, Inc.*, 977 S.W.2d 662, 670 (Tex. App.—Forth Worth 1998, pet. denied)).

Here, Plaintiff essentially alleges that Fagin made a misrepresentation with respect to IBI's financial condition approximately two months before it was declared in default and his accounts were wiped off, and the remaining defendants ratified that action. As discussed, however, these allegations are insufficient to give rise to a reasonable inference that a confidential or fiduciary

13

relationship existed between the parties, or that the representation was false, misleading, or incomplete at the time it was made. Additionally, there are no allegations suggesting that Defendants knew Plaintiff was ignorant of IBI's financial condition or knew that it did not have an equal opportunity to discover the truth. In sum, Plaintiff has failed to plead sufficient facts giving rise to a duty to disclose, and has failed to state a claim for fraud by non-disclosure against Defendants.

## IX. LEAVE TO AMEND

As an alternative to dismissal of its claims, Plaintiff moves for leave to amend its complaint, and to grant it time to depose Fagin, Twiss, and Holland prior to any required repleading.

"[I]t is not unusual for plaintiffs who oppose a motion to dismiss to request leave to amend in the event the motion is granted." *Great Plains Trust Co.*, 313 F.3d at 329. While a court may deny the motion and dismiss the complaint, "it should not do so without granting leave to amend, unless the defect is simply incurable or the plaintiff has failed to plead with particularity after being afforded repeated opportunities to do so." *Hart v. Bayer Corp.*, 199 F.3d 239, 248 n.6 (5th Cir. 2000) (citation omitted). In other words, "a plaintiff's failure to meet the specific pleading requirements should not automatically or [inflexibly] result in dismissal of the complaint with prejudice." *Id.* Given the consequences of dismissal on the complaint alone, and the preference for adjudication on the merits, "district courts often afford plaintiffs at least one opportunity to cure pleading deficiencies before dismissing a case, unless it is clear that the defects are incurable or the plaintiffs advise the court that they are unwilling or unable to amend in a manner that will avoid dismissal." *Great Plains*, 313 F.3d at 329.

In this case, the only argument presented for denial of the leave to amend is FDIC's assertion

that the amendment would be futile, as evidenced by Plaintiff's request for additional time to depose the individual defendants before repleading. The request, by itself, is not enough to show that the defects in the complaint are incurable, however. Accordingly, Plaintiff's motion for leave to file an amended complaint is granted, and it may file an amended complaint within fourteen days from the date of this order.[2]

## X. CONCLUSION

The motions to dismiss filed by Defendants are **GRANTED**, the alternative motions by FDIC and Fagin for a more definite statement are **DENIED** as moot, and Plaintiff's motion for leave to file an amended complaint is **GRANTED**. Unless Plaintiff files an amended complaint within fourteen days of the entry of this order, all of its claims against Defendants will be dismissed with prejudice.

**SO ORDERED on this 1st day of July, 2011.**

_____
IRMA CARRILLO RAMIREZ
UNITED STATES MAGISTRATE JUDGE

---

[2]There is no need to grant Plaintiff additional time to depose the individual defendants because the deadline to depose them falls within the fourteen day period for amendment. According to the amended scheduling order governing this case, "[e]ach individual defendant who has not been granted dismissal under Rule 12 as of June 15, 2011, will be available for deposition on or before June 30, 2011." (doc. 63.)