IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| NETVET GROUP, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | Civil Action No. 3:10-CV-1934-BH |
| | § | |
| SCOTT FAGIN, et al., | § | |
| | § | |
| Defendants. | § | |

## MEMORANDUM OPINION AND ORDER

By order dated November 4, 2010, this matter has been transferred for the conduct of all further proceedings and the entry of judgment. Before the Court is *Defendant FDIC, as Receiver for Colonial Bank's, Second Motion to Dismiss for Failure to State a Claim and Brief in Support* (doc.73), filed July 29, 2011. Based on the relevant filings and applicable law, the motion is **GRANTED** in part and **DENIED** in part.

## I. BACKGROUND

Plaintiff NetVet, Inc. ("Plaintiff") initially filed this action against Scott Fagin, David Twiss, Malcolm Holland, and Federal Deposit Insurance Corporation ("FDIC") as receiver for Colonial Bank ("Colonial"), claiming fraud, breach of fiduciary duty, negligence, negligent misrepresentation, theft, conversion, and gross negligence. Upon motion to dismiss filed by the defendants, the court found that Plaintiff had failed to state a claim under Fed. R. Civ. P. 12(b)(6) and allowed Plaintiff an opportunity to amend its complaint. Since then Fagin, Twiss, and Holland have been terminated as parties, and Plaintiff has filed its second amended complaint.

The second amended complaint alleges that Plaintiff obtained a $3,000,000.00 construction loan from Colonial in 2007 to build a veterinary hospital. Fagin, a senior loan officer at Colonial,

allegedly convinced Plaintiff to hire Integrated Builder's, Inc. ("IBI") as its general contractor on the construction project. Fagin suggested that hiring IBI was a good idea because Colonial was not only Plaintiff's lender on the construction loan, but also IBI's bank. Fagin's and Colonials' intimate knowledge of Plaintiff's and IBI's accounts and financial position proved beneficial because it allowed for the expedited transfer of funds from the construction loan to IBI for the project. By February 2008, the construction project had allegedly progressed, and several draws had been made against the loan.

Around the same time, however, Plaintiff allegedly became concerned about IBI's ability to complete the project after hearing that IBI had encountered financial difficulties and might not be able to stay in business. Given these concerns, its executive director Bruce Nixon allegedly approached Fagin to inquire about IBI's financial condition. Fagin allegedly scheduled a meeting with IBI's chief financial officer Bob Carroll within days of that inquiry. He later told Nixon that "despite a perfect storm of events having transpired," IBI was doing well financially; that based on his intimate knowledge of IBI's banking situation, he had no concerns about IBI and was fully confident in IBI's ability to complete the project; and that Nixon should likewise have no concerns about IBI's long-term financial position. Fagin allegedly assured Nixon that the current system of draw requests and transfers of Plaintiff's money to IBI was secure, and that he would closely oversee that it would continue. Satisfied with Fagin's assurances as a senior officer with Colonial, Plaintiff allowed the project to continue and draws to be made as they had been in the past.

Plaintiff claims that in early May 2008, it requested another draw against the construction loan for $271,464.00, so that IBI could pay its subcontractors. About two weeks after the draw request, Fagin and Colonial approved the request and transferred the funds to IBI's account for the

payment of subcontractors.  The IBI account where Fagin and Colonial placed the funds for payment of subcontractors was allegedly tied to a promissory note from IBI to Colonial.  In mid May 2008, Fagin made a "courtesy call" to Nixon to inform him that IBI was in serious financial trouble and that Colonial would have to take legal action against IBI.  A guarantor of IBI's promissory note had allegedly informed Colonial that IBI was in financial distress, and that the guarantor intended to contest liability on the guarantee.  Nixon thanked Fagin and emphasized his concern over the security of Plaintiff's money.  Nixon then frantically tried to determine how to proceed.  Within two hours of the phone call, Fagin allegedly told Nixon to completely disregard his previous call as the bank had worked out an arrangement wherein Colonial and IBI would ensure that Plaintiff's project would be completed, and its money was secure.  On May 22, 2008, however, Fagin concluded that IBI was in default on its promissory note with Colonial. Colonial swept all of IBI's accounts, including the account containing Plaintiff's $271,464.00 loan draw to pay subcontractors.  Soon after, Fagin called Nixon and told him that Plaintiff's recent draw request of $271,464.00 was gone. IBI had cut checks to the subcontractors, but Fagin and Colonial refused to release the funds.

Plaintiff claims that having just made it an involuntary guarantor of IBI's promissory note (after a voluntary guarantor contested his liability on IBI's promissory note), Fagin and Colonial quickly attempted to pressure Plaintiff to execute an agreement to increase the construction loan by another $271,464.00, and pressured it to execute a release they had inserted into the agreement to absolve themselves of any wrongdoing.  Plaintiff states that it refused to execute the agreement, took the remaining construction loan to pay subcontractors for work completed, borrowed funds from other more reputable sources, and proceeded to hire another contractor to complete the building at a cost of approximately $180,000.00.  Plaintiff alleges that Fagin and Nixon exchanged eighteen

telephone calls from May 16, 2008 through June 11, 2008, regarding the circumstances surrounding the construction loan, the draw request, IBI's default, and the increase in the amount of the loan. Plaintiff seeks direct, consequential, and exemplary damages as well as attorney's fees.

FDIC, as receiver for Colonial (Defendant), now moves to dismiss all of Plaintiff's claims under Fed. R. Civ. P. 12(b)(6) for failure to state a claim upon which relief can be granted.

## II.  LEGAL STANDARD

Motions to dismiss under Rule 12(b)(6) are disfavored and rarely granted. *Sosa v. Coleman*, 646 F.2d 991, 993 (5th Cir. 1981).   Under the 12(b)(6) standard, a court cannot look beyond the pleadings. *Spivey v. Robertson*, 197 F.3d 772, 774 (5th Cir. 1999); *Baker v. Putnal*, 75 F.3d 190, 196 (5th Cir. 1996).  Pleadings must show specific, well-pleaded facts, not mere conclusory allegations to avoid dismissal. *Guidry v. Bank of LaPlace*, 954 F.2d 278, 281 (5th Cir. 1992).  The court must accept those well-pleaded facts as true and view them in the light most favorable to the plaintiff. *Baker*, 75 F.3d at 196.  "[A] well-pleaded complaint may proceed even if it strikes a savvy judge that actual proof of [the alleged] facts is improbable, and 'that a recovery is very remote and unlikely.'" *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 556 (2007) (citation omitted).  Although "detailed factual allegations" are not necessary, a plaintiff must provide "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Id.* at 555; *accord Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009) (emphasizing that "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions").  The alleged facts must "raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555. In short, a complaint fails to state a claim upon which relief may be granted when it fails to plead "enough facts to state a claim to relief that is plausible on its face." *Id.* at 570.

> A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. The plausibility standard is not akin to a "probability requirement," but it asks for more than a sheer possibility that a defendant has acted unlawfully. Where a complaint pleads facts that are "merely consistent with" a defendant's liability, it "stops short of the line between possibility and plausibility of 'entitlement to relief.'"

*Iqbal*, 129 S. Ct. at 1949 (citations omitted). When plaintiffs "have not nudged their claims across the line from conceivable to plausible, their complaint must be dismissed." *Twombly*, 550 U.S. at 570; *accord Iqbal*, 129 S. Ct. at 1950–51.

### III.  BREACH OF FIDUCIARY DUTY

Defendant moves to dismiss Plaintiff's claim for breach of fiduciary duty on grounds that the second amended complaint does not allege a fiduciary relationship between Plaintiff and Colonial, and that the allegations regarding Colonial's breach of any fiduciary duty are conclusory. (Mot. Br. at 4–7.)

To state a claim for breach of fiduciary duty in Texas, a plaintiff must allege, among other things, that a fiduciary relationship existed between the plaintiff and the defendant. *Navigant Consulting, Inc. v. Wilkinson*, 508 F.3d 277, 283 (5th Cir. 2007) (citing *Jones v. Blume*, 196 S.W.3d 440, 447 (Tex. App.—Dallas 2006, pet. denied)).[1]  Texas law recognizes two types of fiduciary relationships.  The first is a formal fiduciary relationship, such as between attorney and client, principal and agent, partners, and joint venturers. *Ins. Co. of N. Am. v. Morris*, 981 S.W.2d 667, 674 (Tex. 1998).  The second is an informal or confidential relationship that "may arise from a moral, social, domestic, or purely personal relationship of trust and confidence." *Associated Indem. Corp. v. CAT Contracting Co.*, 964 S.W.2d 276, 287–88 (Tex. 1998).  Such an informal or confidential

---

[1]The parties agree that Texas law applies in this diversity case.

5

relationship "may arise when the parties have dealt with each other in such a manner for a long period of time that one party is justified in expecting the other to act in its best interest." *Morris*, 981 S.W.2d at 674.  It may also arise in cases in which "influence has been acquired and abused, in which confidence has been reposed and betrayed." *Associated Indem. Corp.*, 964 S.W.2d at 287. Texas courts do not recognize or create such an informal or confidential fiduciary relationship lightly.  *K3C Inc. v. Bank of Am., N.A.*, 204 F. App'x 455, 461 (5th Cir. 2006); *Schlumberger Tech. Corp. v. Swanson*, 959 S.W.2d 171, 177 (Tex. 1997).

As a general rule, the relationship between a lender and a borrower does not involve a special or confidential relationship.  *Mfrs. Hanover Trust Co. v. Kingston Inv. Corp.*, 819 S.W.2d 607, 610 (Tex. App.—Houston [1st Dist.] 1991, no writ).  "In order to prove that a fiduciary relationship does exist in such a context, the plaintiff must show extraordinary circumstances such as excessive control and influence by the lender on the borrower's business activities." *Hopkins v. Wells Fargo Bank, N.A.*, 2011 WL 611664, at *2 (N.D. Tex. Feb. 18, 2011) (quoting *In re Absolute Res. Corp.*, 76 F. Supp. 2d 723, 734 (N.D. Tex. 1999)).  "Mere subjective trust by the borrower or evidence of prior dealings is not sufficient." *In re Absolute Res. Corp.*, 76 F. Supp. 2d at 734 (citing *Greater Sw. Office Park, Ltd. v. Tex. Commerce Bank Nat'l Ass'n*, 786 S.W.2d 386, 391 (Tex. App.—Houston [1st Dist.] 1990, writ denied)). Generally, whether a fiduciary or confidential relationship exists is a question of fact.  *See Schiller v. Elick*, 240 S.W.2d 997,999 (Tex. 1951); *see also Berry v. First Nat'l Bank of Olney*, 894 S.W.2d 558, 560 (Tex. App.—Fort Worth 1995, no writ).

Here, the facts as alleged in the amended complaint are sufficient to giver rise to an inference of a fiduciary or confidential relationship between Plaintiff and Colonial.  The amended complaint

contains allegations suggesting that Fagin, a senior loan officer at Colonial, played a significant role in Plaintiff's hiring of IBI as a subcontractor, had intimate discussions with Plaintiff about IBI's financial stability, assured Plaintiff that IBI's financial condition was secure, and even when he acknowledged IBI's financial distress, assured Plaintiff that Colonial and IBI would ensure completion of its project and security of its money. The amended complaint also alleges that despite these representations, Colonial swept funds that Plaintiff had transferred to IBI's account for the payment of subcontractors, and later pressured it to execute an agreement increasing the construction loan, and to execute a release absolving it of any wrongdoing. These allegations are sufficient to avoid dismissal of Plaintiff's claim for breach of fiduciary duty at this stage of the proceedings.

Defendant argues that Plaintiff merely makes a conclusory allegation that Fagin was acting in the course and scope of his employment which if true could not have created an obligation on the part of Colonial to disclose confidential customer information. (Mot. Br. at 6–7.) Defendant further argues that there are no allegations against Colonial outside of Fagin's alleged representations establishing a fiduciary relationship. Defendant has not explained and has not provided any authority as to why a senior loan officer acting in the course and scope of his employment for a bank can not create a fiduciary duty on the part of the bank as a matter of law.[2] Its motion to dismiss the breach of fiduciary duty claim is therefore denied.

## IV. NEGLIGENCE

Defendant next moves to dismiss Plaintiff's negligence claim on grounds that the second amended complaint does not sufficiently plead a duty on the part of Colonial, a breach of that duty,

---

[2] Defendant argues that to the extent that Plaintiff is seeking to find FDIC liable outside of its role as receiver for Colonial, there are no factual allegations to support this conclusion. It is clear, however, that Plaintiff is suing FDIC only in its role as receiver for Colonial and is not asserting that it was involved in the underlying events in this case.

or injuries proximately caused by the alleged breach.  (Mot. Br. at 7–9.)  Defendant also argues that

the economic loss doctrine bars Plaintiff's negligence claim.  (*Id*. at 9.)

## A.  Factual Sufficiency

The elements of a negligence cause of action under Texas law are: (1) the existence of a legal

duty; (2) a breach of that duty; and (3) damages proximately caused by that breach.  *Boudreaux v.*

*Swift Transp. Co., Inc.*, 402 F.3d 536, 540–41 (5th Cir. 2005) (citing *IHS Cedars Treatment Ctr. of*

*Desoto, Tex., Inc. v. Mason*, 143 S.W.3d 794, 798 (Tex. 2004)).  The threshold inquiry in any

negligence case is duty.  *Great Plains Trust Co. v. Morgan Stanley Dean Witter & Co.*, 313 F.3d

305, 314 (5th Cir. 2002) (citing *Greater Houston Transp. Co. v. Phillips*, 801 S.W.2d 523, 525 (Tex.

1990)).  "Whether a legal duty exists is a threshold question of law for the court to decide from the

facts surrounding the occurrence in question."  *Thapar v. Zezulka*, 994 S.W.2d 635, 637 (Tex. 1999).

In deciding whether to impose a duty, the court must balance "the  risk, foreseeability, and

likelihood of injury against the social utility of the actor's conduct, the magnitude of the burden of

guarding against the injury, and the consequences of placing the burden on the defendant."  *Golden*

*Spread Council, Inc. No. 562 of Boy Scouts of Am. v. Akins*, 926 S.W.2d 287, 289 (Tex. 1996).

The circumstances alleged in the complaint are sufficient to give rise to a duty on the part

of the bank to accurately portray one customer's financial information to another customer.[3]  The

risk and likelihood of harm from inaccurately disclosing the information is substantial where the

customers and the bank have a relationship of the nature alleged in the complaint.  The harm is

---

[3] Given the new allegations in the amended complaint, the issue no longer is  whether Colonial had the duty to disclose
the information of another customer based on a one-time similar disclosure. The issue is whether it had the duty to
accurately and truthfully disclose IBI's financial information as well as the steps it intended to take with respect to IBI's
account after it had made the decision to make those disclosures and after it had developed a confidential relationship
with it.

8

foreseeable where, as alleged here, the bank has knowledge of the relationship between the customers, has discussed the relationship with the customers, has misguided the customers with respect to that relationship, and will benefit to the detriment of the customer if it does not truthfully or accurately portray the information.  There is arguably no social utility from the bank's inaccurate portrayal of a customer's financial condition to another customer, and there is no burden on the bank in disclosing truthful and accurate information if it has already made the decision to disclose the information.

The allegations in the complaint are also sufficient to suggest that Colonial breached that duty and that the duty proximately caused Plaintiff's injuries.  Plaintiff alleges that Fagin, while acting in the course and scope of his employment with Colonial, acknowledged IBI's financial distress in the "courtesy call", but two hours later misrepresented that Colonial had worked out an arrangement with IBI to ensure that Plaintiff's project would be completed and that its money was secure.  Soon after making these representations, Colonial allegedly swept IBI's account containing Plaintiff's recently deposited funds, and attempted to pressure it to execute an agreement increasing the construction loan.  As a result of these misrepresentations, Plaintiff claims that it had to borrow additional funds to complete the contruction project.  Plaintiff argues that had it not been for the misrepresentations by Fagin and Colonial, it would have sought return of the draw from Colonial which was allegedly approved around the same time as the "courtesy call" and the subsequent assurances by Fagin.  The facts as pled in the complaint are sufficient to avoid dismissal of Plaintiff's negligence claim.

**B.  Economic Loss Doctrine**

Under the economic loss doctrine, "[d]amages resulting solely from economic harm

generally are not recoverable in simple negligence actions." *Express One Int'l v. Steinbeck*, 53 S.W.3d 895, 898 (Tex. App.—Dallas 2001, no pet.). The economic loss doctrine "has been applied by Texas Courts in two related, overlapping contexts." *Pugh v. Gen. Terrazzo Supplies, Inc.*, 243 S.W.3d 84, 90–91 (Tex. App.—Houston [1st Dist.] 2007, pet. denied). "First, the doctrine has been applied to preclude tort claims brought to recover economic losses when those losses are the subject matter of a contract." *Id.* (citing *Coastal Conduit & Ditching, Inc. v. Noram Energy Corp.*, 29 S.W.3d 282, 285 (Tex. App.—Houston [14th Dist.] 2000, no pet.); *Jim Walter Homes v. Reed*, 711 S.W.2d 617, 618 (Tex. 1986)). "Second, the economic loss doctrine has been applied to preclude tort claims brought to recover economic losses against the manufacturer or seller of a defective product where the defect damages only the product and does not cause 'personal injury' or damage to 'other property.'" *Id.* (citing *Coastal Conduit & Ditching, Inc.*, 29 S.W.3d at 285–86). "Among the policy reasons supporting this rule is the difficulty, if not impossibility, of placing a reasonable limit on a defendant's liability to those who suffer solely economic damages caused by a negligent action." *Steinbeck*, 53 S.W.3d at 899.

Here, Plaintiff does not seek recovery of economic losses that are the subject matter of a contract. Nor does it seek economic losses against the seller of a defective product for damages to the product itself. It seeks economic damages resulting from an alleged breach of a legal duty that a bank owed to its customer. The economic loss doctrine therefore does not bar the negligence claim in this case. *See Coastal conduit & Ditching Inc.*, 29 S.W.3d at 288–89 (recognizing that the economic loss doctrine does not bar a negligence claim where there is contractual relationship between the parties and the situation imposes a duty on the defendant).

10

## V.  GROSS NEGLIGENCE

Defendant moves to dismiss Plaintiff's gross negligence claim on grounds that the allegations are merely a recitation of the elements of gross negligence and are not sufficient to allege that Colonial's actions involved an extreme degree of risk.  (Mot. Br. at 12–13.)

As noted, the elements of a negligence cause of action under Texas law are: (1) the existence of a legal duty; (2) a breach of that duty; and (3) damages proximately caused by that breach. *Boudreaux*, 402 F.3d at 540–41.  Gross negligence has two additional requirements: "(1) viewed objectively from the standpoint of the actor, the act or omission must involve an extreme degree of risk, considering the probability and magnitude of the potential harm to others, and (2) the actor must have actual, subjective awareness of the risk involved, but nevertheless proceed with conscious indifference to the rights, safety, or welfare of others."  *Great Plains Trust Co.*, 313 F.3d at 314 (citations omitted); *see also In re Thrash*, 433 B.R. 585, 600 (N.D. Tex. 2010).

As discussed, the allegations are sufficient to state a plausible claim for relief against Defendant for negligence.  The allegations are also sufficient to give rise to a reasonable inference that Colonial's conduct involved an extreme degree of risk considering the probability and magnitude of the potential harm to Plaintiff, and that Colonial had actual, subjective awareness of the risk involved, but nevertheless proceeded with conscious indifference to the welfare of Plaintiff. The gross negligent claim is therefore not subject to dismissal at this stage of the proceedings.

## VI.  NEGLIGENT MISREPRESENTATION

Defendant moves to dimiss Plaintiff's negligent representation claim on grounds that there are no facts that would support a conclusion that Fagin's representations were false when made, that he did not exercise reasonable care in obtaining or communicating information to Plaintiff, or that

Plaintiff justifiable relied on any misrepresentations.  (Mot. Br. at 10–11.)

A claim for negligent representation under Texas law consists of four elements: (1) the defendant made a representation in the course of his business, or in a transaction in which he has a pecuniary interest; (2) the defendant supplied false information for the guidance of others in their business; (3) the defendant did not exercise reasonable care or competence in obtaining or communicating the information; and (4) the plaintiff suffered pecuniary loss by justifiably relying on the representation.  *General Elec. Capital Corp. v. Posey*, 415 F.3d 391 (5th Cir. 2005); *see also Nazareth Int'l. Inc. v. J.C. Penney Co.*, 287 S.W.3d 452, 460 (Tex. App.—Dallas 2009, pet. denied).

With respect to its negligent misrepresentation claim, Plaintiff alleges that Fagin made false representations regarding the financial stability of IBI and its ability to complete the project. Plaintiff alleges that Fagin made a "courtesy call" to Nixon stating that IBI was in serious financial trouble, reversed his statement two hours later when he told Nixon that Colonial had worked out an arrangement with IBI to ensure that Plaintiff's project would be completed and that its money was secure, and reversed the statement again a few days later when he swept IBI's accounts recently funded by Plaintiff's draw from the loan.  Plaintiff explains that these subsequent reversals show that Fagin and Colonial did not exercise reasonable care or competence in obtaining or communicating the information to Plaintiff despite their intimate knowledge of IBI's financial position and the transaction between them.  Plaintiff alleges that it could have attempted to stop payment of the funds after Fagin's "courtesy call" but was influenced by Fagin's representation that an arrangement had been reached between IBI and Colonial to ensure completion of the project and safety of its money. These allegations plausibly state a claim for relief based on a negligent misrepresentation cause of action.  *See Muhammad v. Dallas Cnty. Cmty. Supervision & Corrs. Dep't*, 479 F.3d 377, 380 (5th

Cir. 2007) (the issue at the motion to dismiss stage is not whether the plaintiff will ultimately prevail but whether he is entitled to offer evidence to support his claim).

## VII.  THEFT

Defendants move to dismiss Plaintiff's theft claim on grounds that the allegations underlying it are conclusory and do not raise a reasonable inference that Colonial committed theft.  (Mot. Br. at 11–12.)

Plaintiff has asserted its theft claim under the Texas Theft Liability Act, which defines theft "as unlawfully appropriating property or unlawfully obtaining services" as described by various sections of  the Texas Penal Code.  *See* Tex. Civ. Prac. & Rem. Code § 134.002(2).  Under § 31.03 of the Texas Penal Code, "a person commits theft if he unlawfully appropriates property with the intent to deprive the owner of the property."  Tex. Penal Code § 31.03(a).  Section 31.01(5)(C) of the Texas Penal Code defines property to include money or a document that represents anything of value.  *See id.* § 31.01(5)(C).  Appropriation of property is unlawful if it is without the owner's effective consent.  *Id.* § 31.03(b).  Consent is not effective, if among other things, it is induced by deception.  *Id.* § 31.01(3)(A). "Deception" means "creating or confirming by words or conduct a false impression of law or fact that is likely to affect the judgment of another in the transaction, and that the actor does not believe to be true" or "failing to correct a false impression of law or fact that is likely to affect the judgment of another in the transaction, that the actor previously created or confirmed by words or conduct, and that the actor does not now believe to be true."  *Id.* §§ 31.01(1)(A) & (B).

Regarding its theft claim, Plaintiff alleges that Colonial neither had a right to possess the funds intended for its subcontractors, nor had its effective consent because "any consent obtained

13

for the draw request, or continuing consent to the draw request while the draw request was being approved or after the draw request was executed, was induced by deception and/or non-disclosure on the part of Fagin and Colonial." Plaintiff states that Fagin's ultimately misleading statement to Nixon that Colonial had reached an agreement with IBI to assure the completion of Plaintiff's project gives rise to a reasonable inference that the statement was made with the intent to deceive and induce Plaintiff to keep its funds in IBI's account. Plaintiff also states that Fagin and Colonial knew that they were going to sweep the account with the funds intended for subcontractors and intended to deprive it of its property by deceiving it into transferring money into its account. Its allegation that Fagin reassured it of IBI's financial stability after it had heard of IBI's financial difficulties also gives rise to a reasonable inference that the reassuring statements were meant to induce Plaintiff to make a draw request. With the new factual allegations, Plaintiff has nudged its theft claim across the line from conceivable to plausible. The claim is therefore not subject to dismissal under Rule 12(b)(6).

## VIII.  CONVERSION

Defendant moves to dismiss Plaintiff's conversion claim on the same grounds that it argued for dismissal of Plaintiff's theft claim. (Mot. Br. at 13.) Defendant also argues that the funds at issue cannot be the subject of a claim for conversion because funds deposited into a bank are the property of the bank representing a debt, cannot be described as specific chattel and are capable of being discharged by the payment of money generally. (*Id.* at 13–14.)

To establish a claim for conversion under Texas law, a plaintiff must show that the defendant wrongfully exercised dominion or control over the property of the plaintiff to the exclusion of, or inconsistent with the plaintiff's right of possession. *50-Off Stores, Inc. v. Banques Paribas (Suisse)*,

180 F.3d 247, 253 (5th Cir. 1999); *see also Robinson v. Nat'l Autotech, Inc.*, 117 S.W.3d 37, 39 (Tex. App.—Dallas 2003, pet. denied).  "'Money is subject to conversion only when it is a specific chattel, and not where an indebtedness may be discharged by the payment of money generally.'" *Hill v. Anderson*, 420 F.App'x 427, 435 (5th Cir. 2011) (citing *Newsome v. Charter Bank Colonial*, 940 S.W.2d 157, 161 (Tex. App. 1996)).  "An action will lie for conversion of money when its identification is possible and there is an obligation to deliver the specific money in question or otherwise particularly treat specific money." *Houston Nat'l Bank v. Biber*, 613 S.W.2d 771, 774–75 (Tex.Civ. App.—Houston [14th Dist.] 1981, writ ref'd n.r.e.).  Examples of money as a specific chattel include funds "delivered for safe keeping" or money "intended to be kept segregated." *Hill*, 420 F.App'x at 435.  In order to assert a claim for conversion of money, the money must be "(1) delivered for safe keeping; (2) intended to be kept segregated; (3) substantially in the form in which it is received or an intact fund; and (4) not the subject of a title claim by the keeper." *Jackson v. DaimlerChrysler Corp.*, 2004 WL 690840, at *10 (N.D. Tex. Mar. 20, 2004) (citing *Edlund v. Bounds*, 842 S.W.2d 719, 727 (Tex.App.—Dallas 1992, writ denied).

Here, for the same reasons that Plaintiff has stated a theft claim, Plaintiff has stated a claim for conversion.  Whether or not the money constitutes specific chattel subject to conversion is a fact-specific inquiry which is more appropriate at the summary judgment stage.  Plaintiff's conversion claim survives dismissal at the motion to dismiss stage.

## IX.  FRAUD

Defendant moves to dismiss Plaintiff's claim for fraud by misrepresentation and non-disclosure on grounds that it has failed to meet the heightened pleading standard of Rule 9(b).

## A.  Heightened Standard

A dismissal for failure to plead fraud with particularity pursuant to Rule 9(b) is treated the same as a Rule 12(b)(6) dismissal for failure to state a claim.  *McCall v. Genentech, Inc.*, 2011 WL 2312280, at *3 (N.D. Tex. June 9, 2011) (citing *Lovelace v. Software Spectrum Inc.*, 78 F.3d 1015, 1017 (5th Cir. 1996)).  Rule 9(b) contains a heightened pleading standard and requires a plaintiff to plead the circumstances constituting fraud with particularity.  *See* Fed. R. Civ. P. 9(b); *City of Clinton, Ark. v. Pilgrim's Pride Corp.*, 632 F.3d 148, 153 (5th Cir. 2010).  "[A]rticulating the elements of fraud with particularity requires a plaintiff to specify the statements contended to be fraudulent, identify the speaker, state when and where the statements were made, and explain why the statements were fraudulent."  *Williams v. WMX Techs.*, 112 F.3d 175, 177 (5th Cir. 1997).  "Put simply, Rule 9(b) requires 'the who, what, when, where, and how' to be laid out" with respect to a fraud claim.  *Benchmark Electronics, Inc. v. J.M. Huber Corp.*, 343 F.3d 719, 724 (5th Cir. 2003).

## A.  Misrepresentation

Plaintiff first alleges that Fagin committed fraud by making a material misrepresentation regarding IBI's financial stability and its ability to complete the project in February and May of 2008.  The elements of fraud by affirmative misrepresentation in Texas are: (1) the defendant made a representation to the plaintiff; (2) the representation was material; (3) the representation was false; (4) when the defendant made the representation, he knew it was false or made it recklessly and without knowledge of its truth; (5) the defendant made the representation with the intent that the plaintiff act on it; (6) the plaintiff relied on the representation; and (7) the representation caused injury to the plaintiff.  *Shandong Yinguang Chem. Indus. Joint Stock Co. v. Potter*, 607 F.3d 1029, 1032–33 (5th Cir. 2010) (citing *Ernst & Young, L.L.P. v. Pacific Mut. Life Ins. Co.*, 51 S.W.3d 573,

577 (Tex. 2001)).

Plaintiff alleges that Fagin misrepresented IBI's financial condition to Nixon in February 2008, after it had heard of IBI's financial difficulties, and that it relied on Fagin's misrepresentation in allowing draws to be made as before, including the draw eventually swept by Colonial.  Plaintiff also claims that Fagin misrepresented that Colonial had reached an agreement with IBI to ensure completion of Plaintiff's project and to ensure that its money was safe, but soon afterwards, Colonial swept the account containing the funds at issue.  Plaintiff claims that if not for the misrepresentation about the arrangement with IBI, it could have attempted to stop payment of the funds.  Although Plaintiff does not explain how it would have stopped the payment, it need not provide those detailed factual allegations at this stage of the proceedings.  Nor is it required to specifically allege malice, intent, knowledge, or other conditions of the mind with particularity; a general allegation of those conditions is enough.  Fed. R. Civ. P. 9(b).  Given its allegations, Plaintiff has alleged the who, what, when, where and how of its fraud claim and the claim is not subject to dismissal for failure to plead with particularity.

**B.  Non-Disclosure**

Plaintiff also alleges that Colonial committed fraud by failing to disclose IBI's financial condition and its imminent default.  "As a general rule, a failure to disclose information does not constitute fraud unless there is a duty to disclose the information." *Bradford v. Vento*, 48 S.W.3d 749, 755 (Tex. 2001) (citing *Morris*, 981 S.W.2d at 674)).  Silence may equate to fraud only "when the particular circumstances impose a duty on the party to speak and he deliberately remains silent." *See id.* (citing *SmithKline Beecham Corp. v. Doe*, 903 S.W.2d 347, 353 (Tex. 1995)).  A duty to disclose arises by operation of law when: (1) there is a confidential or fiduciary relationship between

17

the parties; (2) one party learns that his previous affirmative statement was false or misleading; (3) one party knows that the other party is relying on a concealed fact, provided that the concealing party also knows that the relying party is ignorant of the concealed fact and does not have an equal opportunity to discover the truth; or (4) one party makes a partial disclosure voluntarily and conveys a false impression. *Union Pac. Res. Group v. Rhone Poulenc, Inc.*, 247 F.3d 574, 586 (5th Cir. 2001) (citing *World Help v. Leisure Lifestyles, Inc.*, 977 S.W.2d 662, 670 (Tex. App.—Forth Worth 1998, pet. denied)).

Plaintiff claims that having voluntarily assumed a duty to disclose IBI's financial condition in February and May, 2008, Fagin and Colonial had the affirmative duty to disclose IBI's imminent default when Plaintiff requested a specific draw to pay subcontractors in early May, and when Fagin assured Nixon after his "courtesy call" of Colonial's arrangement with IBI to complete Plaintiff's project. Plaintiff alleges that Fagin and Colonial knew that IBI was on the brink of default and they deliberately remained silent so as to create an involuntary guarantor out of Plaintiff. Relying on Fagin's and Colonial's assurances, Plaintiff claims, it assumed that the subcontractors would be paid as before and suffered damages as a result. As discussed earlier, the facts sufficiently plead a confidential or fiduciary relationship between the parties and therefore a duty to disclose. The facts also sufficiently plead a breach of that duty and damages resulting from that breach. Plaintiff's fraud claim therefore need not be dismissed at this stage.

## X.  EXEMPLARY DAMAGES

Defendant argues that Plaintiff's claim for exemplary damages (or punitive damages) against it is precluded by federal statute and common law. (Mot. Br. at 15–16.) Plaintiff does not respond to this argument.

18

"Absent congressional authorization, punitive damages award may not be awarded against the FDIC." *Royal Bank of Canada v. F.D.I.C.*, 733 F.Supp. 1091, 1099 (N.D. Tex. 1990) (citing *Commerce Fed. Sav. Bank v. FDIC*, 872 F.2d 1240, 1248 (6th Cir. 1989). "This rule is grounded on the 'long-established principle' that an agency or instrumentality of the United States is immune from punitive damage awards." *See id.* Because no congressional authorization exists for an assessment of punitive damages against the FDIC, Plaintiff's claim for punitive damages is dismissed. *See id.* (dismissing punitive damages claim against FDIC in its capacity as receiver for insolvent bank); *see also Fed. Deposit Ins. Corp. v. Claycomb*, 945 F.2d 853, 861 (5th Cir. 1991) ("[the] rule that a claim for punitive damages cannot be asserted against institutions created to serve the public interest has been applied to receivers for insolvent banks").

## XI. CONCLUSION

Defendant's motion to dismiss is **GRANTED** in part and **DENIED** in part. Plaintiff's claim for exemplary damages is dismissed with prejudice, and its claims for breach of fiduciary duty, negligence, gross negligence, negligent misrepresentation, theft, conversion, and fraud remain pending.

**SO ORDERED** on this 14th day of December, 2011.

IRMA CARRILLO RAMIREZ
UNITED STATES MAGISTRATE JUDGE